IN RICHMOND SUPERIOR COURT, JULY, 1831.

THE STATE *vs.* H. B. FRASER, Jailor of Richmond County.

*Habeas Corpus on Petition of Winney Stephens.*

On a writ of Habeas Corpus, the court will discharge, admit to bail, or remand, according to the circumstances of the case ; but it will not try any rights of property. And if the writ be to bring up infants, the court, though bound, *ex debito justitiæ,* to free them from all illegal restraint, *it is not* bound to *deliver them* over to *any body,* or to *give them any privilege.*

THE petition sets forth that the " Petitioner is a free woman of color, and has been for a long time past in the jail of Richmond county, under an order of court, which, although intended for her benefit, (which she gratefully acknowledges) deprives her actually of the right of locomotion, to which by the laws of the land, and the rights of her birth, she is entitled." It prays for the writ of *habeas corpus* " to the end that her case may be investigated, and justice may be done." The jailor having brought up the woman, Winney, returns the following order of the Inferior Court, as the cause of her detention, to wit : " In the matter of the writ of *habeas corpus,* at the instance of Winney or Jane, and on the return of Dr. William Savage, it appearing to the court, that the said girl, Winney or Jane, is probably a free woman of color, and it appearing also probable that if left in the custody of Dr.

William Savage, or any other person, she might be removed from the State. It is therefore ordered that the said Winney or Jane be removed for protection and safe keeping to the common jail, there to remain, until the person who claims property in her, viz. John N. Philpot shall give bond or recognizance to the guardian of said Winney or Jane, in the sum of one thousand dollars, with one or more good and sufficient securities, with the condition that he the said John N. Philpot shall produce the said woman, Winney or Jane, at all times when required by this court, or by the Superior Court, and also that the said Winney or Jane shall be well and humanely treated by the said John N., until the decision of her claims to freedom, by some competent authority."

Upon this return the counsel for Winney offers to prove her freedom, that he may sustain the motion for her discharge not only from present confinement, but from her liability to serve Philpot or any other person as a slave, and reads several letters and affidavits representing her to have been born of free parents in the county of Worcester, Maryland. He contends that under this writ, the court has power to sustain the motion, and insists that according to the principles contained in *Magna Charta*, as well as by the constitution of this State and of the United States, the court cannot withhold the benefits of the writ of *habeas corpus* from any free person of whatever color illegally imprisoned; and that upon the return of the writ, it is bound to enquire into the legality of the imprisonment, and discharge if found to be illegal and without proper authority. The counsel for John N. Philpot, resisting the motion, contends that as the return shows a claim of property in Winney, the court must remit her to her legal remedy, and in the mean time leave her at the disposal of her alleged master. A bill of sale of Winney from one Johnson to Philpot is produced.

*Per Curiam.* There appears to the court no possible objection to a discharge of Winney from her present confinement, which by the return seems to have been by her own request, or at least for her safety, and to prevent her being eloigned by John N. Philpot, who claims her as his slave. But the court is prayed to go farther and adjudge her right to liberty, as well as to restore her to the right of locomotion, of which she complains she is deprived. Can this court go farther than simply to discharge the Petitioner? Can it, under *this writ*, inquire into and adjudge the right to freedom claimed by the petitioner, in opposition to the claim of property in her as a slave by Philpot. These are the questions distinctly presented to the court for its determination, and though grave and important, they seem simple enough to be answered without much hesitation. The writ of *habeas corpus* is intended for the protection of the personal liberty of freemen, and never was designed or used to try any right

RICHMOND,
July, 1831.

THE STATE
v.
FRASER.

of *property.* The Court of King's Bench in the case of Penelope Smith reported in 2 Strange, 982, refused to inquire into and determine the right of guardianship; declaring that the father who had sued out the writ and sought to have possession of his son, had other remedy. He might have *trespass quare filium et hæredem suum rapuit,* or other action which would bring the right of guardianship in question. All the court would do was to deliver the boy out of the custody of the aunt, and inform him he might go where he pleased. Here the court is called upon to determine not the right of *guardianship,* but the right to the *perpetual and involuntary service* of Winney, or *whether she be or be not the slave of Philpot?* The guardian of Winney has other remedy. He may have his writ under the State expressly designed to try the right of freedom, and which gives ample relief. If the petitioner were without remedy and could have no other protection against the hand of lawless violence than this writ affords, the court would, without determining any right, make use of the power it possesses of protecting every individual in society of whatever grade, to shield the petitioner until an adequate remedy could be provided. But the legislature has not left a case of this magnitude and importance unprovided for, and forced her judges to the exercise of a doubtful and uncertain power over a matter in which the natural love of liberty inclines with such force against a mere claim of property. Slavery having been introduced into Georgia at an early period of her history, the attention of the people was called to this subject by the necessity of defining the rights and powers of the master, of regulating the conduct of the slave, and of securing the rights of such of the slave race as should become free, with a view to the preservation of order and good government in a community consisting of three distinct classes of people, citizens, free negroes, and slaves, and on the 10th May, 1770, an act was passed for these purposes. By this act a most ample and complete remedy is given to negroes held in slavery who claim to be free; a remedy extending not only to present security against cruel and inhuman treatment, and a fair trial, but to damages for the wrong sustained. When this act was passed, the principles of *Magna Charta* were as well understood here as they now are, and the writ of *habeas corpus* was of as much force as it now derives from the Constitution. The right of trial by jury was also well understood, and considered among the most invaluable rights secured by *Magna Charta.* They were all of too much value to be lost or even impaired, and the people finding among them a class of men held as absolute *property,* and an intermediate class, neither slaves nor free citizens, were driven to the necessity of enacting new laws in order to preserve these great principles, to adapt them to the actually existing state of society, and to extend them as far as possible. Hence the wisdom and

RICHMOND,
July, 1831.

THE STATE
v.
FRASER.

propriety of this act, by the provisions of which the liberty and security of negroes claiming to be free, (if indeed free) are guarded on one hand, and the trial by jury of the right of property is secured to the person claiming to be master on the other. Since the enactment of this law, the *habeas corpus* and the trial by jury have both become constitutional provisions, and the court has no more power to interfere with and deny the latter than it has to suspend or refuse the former. It was stated in argument and much stress was laid upon it, that the *habeas corpus* is a writ of *right* to which every freeman deprived of his liberty is *entitled, ex debito justitiæ.* This is very true. Yet on the return of the writ, the court must act according to the circumstances of each particular case. If the imprisonment be upon a criminal charge, it will either discharge, admit to bail, or remand, according to the nature of the charge, and the facts disclosed. If the *habeas corpus* be to bring up infants (and of this nature is the present case) the court is bound *ex debito justitiæ* to set the infants free from all improper restraints ; but *it is not* bound to *deliver them* over to *any body* nor to *give them any privilege.* This is the doctrine held in the case of the King against Delaval and others, 3 Burr. 1434. in which Lord Mansfield recognizes the authority of Smith's case before cited, and it is a doctrine which derives additional strength from the peculiar character of our institutions and of the person to whom it is applied in the case before the court. But it is said, the condition of free persons of color will be wretched indeed, if they are to be left to the mercy of the unprincipled and lawless, and cannot have protection from the courts.

That they will not be protected does not follow from the refusal to try a right of property under *habeas corpus.* The protection of the law is over all, and the ordinary legal remedy is always within the reach of every one who may need it, and who will use it. In this case it has been more than six months since a guardian was appointed the petitioner, to enable her to prosecute her legal remedy. If she delay or refuse to do so, there can be no just complaint of a want of protection, because the court will not trench upon the constitutional rights of another, to render to her summarily what may be, and perhaps is, justice. All that the court can do is to discharge the petitioner from her present imprisonment, and permit her to return to Dr. William Savage from whose possession she was taken by virtue of the order for her imprisonment, and to leave both Philpot and Winney to their legal remedies.

　　　　　　　Let Winney be discharged.